## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MATTHEW KALEBAUGH,** | |
| **Plaintiff,** | |
| **v.** | |
| | **Case No. 13-2288-DDC-TJJ** |
| **BERMAN & RABIN, P.A.,** | |
| **Defendant.** | |
| **JESSIE L. RAY,** | |
| **Plaintiff,** | |
| | **Case No. 13-2289-DDC-TJJ** |
| **v.** | |
| **BERMAN & RABIN, P.A.,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiffs Matthew Kalebaugh and Jessie L. Ray each filed a lawsuit against Defendant

Berman & Rabin, P.A., alleging violations of the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692, *et seq*.  On September 24, 2013, the Court consolidated the two cases (Doc.

7).[1]  This matter is before the Court on plaintiff Jessie L. Ray's Motion for Summary Judgment

(Doc. 10), defendant's Motion for Summary Judgment against plaintiff Jessie L. Ray (Doc. 12),

plaintiff Matthew Kalebaugh's Motion for Summary Judgment (Doc. 15), and defendant's

Motion for Summary Judgment against plaintiff Matthew Kalebaugh (Doc. 17).  For the reasons

explained below, the Court grants in part and denies in part all four motions.

---

[1]        The Court consolidated the cases in Case No. 13-2288, which is the lead case.  All court
documents referenced in this Memorandum and Order refer to the lead case, Case No. 13-2288.

## I.       Uncontroverted Facts

The following facts are uncontroverted.[2]  Plaintiff Ray owed an outstanding balance on a

credit card to Citibank, N.A ("Citibank").  Citibank hired defendant to collect the debt owed by

plaintiff Ray.  In its efforts to collect that debt, defendant sent plaintiff Ray a letter dated June 6,

2012.[3]  In part, that letter stated:  "Balance:  $6,871.02, attorney fees (where applicable), the

exact amount to be determined by agreement between you and us or by a court." [4]

Plaintiff Kalebaugh also owed a separate, outstanding balance on a credit card to

Citibank, which, in turn, hired defendant to collect the debt owed by plaintiff Kalebaugh.  In its

efforts to collect that debt, defendant sent plaintiff Kalebaugh a letter dated October 4, 2012,[5]

that was substantially similar to the letter sent to plaintiff Ray.  In part, that letter stated:

"Balance:  $7,872.73, attorney fees (where applicable), the exact amount to be determined by

agreement between you and us or by a court." [6]

When sending collection letters, defendant only includes the language regarding the

possibility of attorney's fees on accounts where the consumer agreed to pay attorney's fees if the

---

[2]        As stated above, defendant filed two motions for summary judgment in this consolidated case:
(1) defendant's Motion for Summary Judgment against plaintiff Ray (Doc. 12), and (2) defendant's
Motion for Summary Judgment against plaintiff Kalebaugh (Doc. 17).  Plaintiff Ray filed a Response
to defendant's Motion for Summary Judgment (Doc. 14), in which she did not controvert any of the facts
listed in defendant's Statement of Uncontroverted Facts.  To the contrary, plaintiff Ray expressly stated
that all of the facts were uncontroverted.  Defendant Kalebaugh filed no response to defendant's Motion
for Summary Judgment against him, and the time for doing so has expired.  *See* D. Kan. Rule 6.1(d)(2).
Under D. Kan. Rule 56.1(a), the Court deems as admitted the Statements of Uncontroverted Fact in
defendant's Motion for Summary Judgment against plaintiff Kalebaugh because he has not controverted
them.

[3]        Ex. A to Ex. 1 to Def.'s Memo. in Supp. of Mot. for Summ. J. against Pl. Ray (Doc. 13-2).

[4]        *Id.*

[5]        Ex. A to Ex. 1 to Def.'s Memo. in Supp. of Mot. for Summ. J. against Pl. Kalebaugh (Doc. 18-2).

[6]        *Id.*

account is placed with an attorney for collection and the creditor has authorized defendant to file a lawsuit to collect the balance and attorney's fees, if the account is not otherwise resolved.

On or about August 17, 2012, defendant filed a lawsuit in the District Court of Johnson County, Kansas, on behalf of Citibank against plaintiff Ray, seeking to obtain a judgment against plaintiff Ray for the outstanding balance due to Citibank and for reasonable attorney's fees. Plaintiff Ray and Citibank stipulated to judgment against plaintiff Ray, and a Journal Entry of Judgment was entered on February 14, 2013.[7]  The stipulated Journal Entry of Judgment granted judgment in favor of Citibank, "in the principal sum of $6,871.02, plus reasonable attorney's fees of $1,030.65, plus interest on any judgment rendered at the rate of 12% per annum, and $124.50 for costs incurred."[8]

On or about December 12, 2012, defendant filed a lawsuit in the District Court of Wyandotte County, Kansas, on behalf of Citibank against plaintiff Kalebaugh, seeking to obtain a judgment against plaintiff Kalebaugh for the outstanding balance due to Citibank, and for reasonable attorney's fees.  At the time the parties submitted their summary judgment briefing, that lawsuit was still pending and set for trial on November 18, 2013.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is is such that a

---

[7]     Ex. C to Ex. 1 to Def.'s Memo. in Supp. of Mot. for Summ. J. against Pl. Ray (Doc. 13-4).

[8]     *Id.*

3

reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

The Court applies the same standard on cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and its entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the Court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted). In this case, the legal issues and arguments presented by each summary judgment motion are almost identical. Therefore, the Court addresses the legal issues together.

## III.  Analysis

Plaintiffs contend that defendant violated three statutory provisions of the FDCPA. First, plaintiffs claim that defendant failed to state accurately the amount of the debt as required by 15 U.S.C. § 1692g(a)(1). Second, plaintiffs assert that defendant's collection letters demanded attorney's fees not yet incurred in violation of 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(5) which respectively prohibit the false representation of the "character, amount, or legal status of any debt" and a "threat to take any action that cannot legally be taken or that is not intended to be taken." The Court addresses each argument in turn below.

### A.  FDCPA Standard

"The Fair Debt Collection Practices Act establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). One of the purposes of the

FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §

1692(e).  To further that purpose, the FDCPA prohibits debt collectors from using "any false,

deceptive, or misleading representation or means in connection with the collection of any debt"

and requires, within five days of a debt collector's initial communication with the consumer, that

the debt collector must:

> send the consumer a written notice containing—
>     (1) the amount of the debt;
>     (2) the name of the creditor to whom the debt is owed;
>     (3) a statement that unless the consumer, within thirty days after receipt of
>     the notice, disputes the validity of the debt, or any portion thereof, the debt
>     will be assumed to be valid by the debt collector;
>     (4) a statement that if the consumer notifies the debt collector in writing
>     within the thirty-day period that the debt, or any portion thereof, is
>     disputed, the debt collector will obtain verification of the debt or a copy of
>     a judgment against the consumer and a copy of such verification or
>     judgment will be mailed to the consumer by the debt collector; and
>     (5) a statement that, upon the consumer's written request within the thirty-
>     day period, the debt collector will provide the consumer with the name
>     and address of the original creditor, if different from the current creditor.

15 U.S.C. §§ 1692e, 1692g(a)(l)–(5).  The FDCPA specifically prohibits false representations

about the "character, amount, or legal status of any debt" and the "threat to take any action that

cannot legally be taken or that is not intended to be taken."  *Id.* at §§ 1692e(2)(A), (5).  The

statute provides for the recovery of actual damages, statutory damages of $1000, as well as costs

and attorney's fees.  *Id.* at § 1692k.

The Tenth Circuit has recognized that other circuit courts of appeal have applied an

objective standard when analyzing claims under the FDCPA, "measured by how the 'least

sophisticated consumer' would interpret the notice received from the debt collector."  *Ferree v.

Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (unpublished table

opinion) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)).  Under the "least

sophisticated consumer test," the courts consider "how the least sophisticated consumer—one

not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Id.* (citation and quotation omitted).  But as the Tenth Circuit also explained, the least sophisticated consumer "'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).  Thus, while the least sophisticated consumer test "protects the naïve and credulous," the courts apply this standard in a way that also "protects debt collectors against liability for unreasonable misinterpretations of collection notices."  *Clomon*, 988 F.2d at 1319.

At least five circuits have adopted the least sophisticated consumer standard to evaluate alleged FDCPA violations.  *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *see also United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (noting that the least sophisticated consumer standard "comports with basic consumer-protection principles").

In addition, the Seventh and Eighth Circuits have adopted a similar standard evaluating whether the "unsophisticated consumer" would find the language of the collection letter confusing or misleading.  *See Veach v. Sheeks*, 316 F.3d 690, 692–93 (7th Cir. 2003) ("When reviewing documents for compliance with the FDCPA, . . . [the Seventh Circuit] use[s] the 'unsophisticated debtor' standard.") (citations omitted); *Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000) (the unsophisticated consumer standard "protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors

from liability for peculiar interpretations of collections letters.").  The Ninth Circuit has noted

that the "unsophisticated consumer" standard "appears to differ from the majority test only in

semantics."  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 n.2 (9th Cir. 2011) (citing

*Chuway v. Nat'l Action Fin. Serv. Inc.*, 362 F.3d 944, 948–49 (7th Cir. 2004)) (further citation

omitted).  As the Seventh Circuit explained in *Chuway*, the least sophisticated consumer "is the

single most unsophisticated consumer who exists which means that he cannot even read, for the

literacy rate in the United States is not 100 percent," but nevertheless courts have "consistently

applied the least-sophisticated-consumer standard in a manner that protects debt collectors

against liability for unreasonable misinterpretations of collection notices."  *Id.* at 948–49.  Thus,

the Seventh Circuit concluded the "more precise benchmark is the understanding of 'the

unsophisticated debtor,' a formulation which 'assumes that the debtor is "uninformed, naive, or

trusting," [but] that statements are not confusing or misleading unless a significant fraction of the

population would be similarly misled.'"  *Id.* at 949 (quoting *Veach v. Sheeks*, 316 F.3d 690, 692–

93 (7th Cir. 2003)).

    For similar reasons, the Fifth Circuit considers these two tests one in the same.  *See*

*Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) ("The most

widely accepted tests for determining whether a collection letter contains false, deceptive, or

misleading representations are objective standards based on the concepts of the 'least

sophisticated consumer' or the 'unsophisticated consumer.'").  This circuit has declined to adopt

either standard because it believes "the difference between the standards is de minimis at most."

*Peter v. GC Servs., L.P.*, 310 F.3d 344, 349 n.1 (5th Cir. 2002).  Neither the Tenth Circuit nor

any other circuit has adopted a more forgiving standard (to the debt collector) than the standards

described above for claims under the FDCPA.

While the Tenth Circuit has not adopted either the least sophisticated consumer or unsophisticated consumer test explicitly, the court in *Ferree v. Marianos* applied the least sophisticated consumer standard, albeit in an unpublished opinion.  It found, "[e]ven the least sophisticated consumer, receiving two communications in the same envelope, . . . would sufficiently examine the entire contents of the envelope, and uncover the enclosed validation notice." *Ferree*, 1997 WL 687693, at *2 (internal quotations omitted).  Although the Tenth Circuit has not expressly adopted a position on the standard district courts in this circuit should employ to evaluate plaintiffs' FDCPA claims, the Tenth Circuit has applied this test, as *Ferree* demonstrates.  Moreover, the Tenth Circuit has explained that the FDCPA is a remedial statute that "should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (citation omitted).  Based on this guidance from the Tenth Circuit, the Court will apply the least sophisticated consumer standard to plaintiffs' claims in this case.  However, the Court concludes that it would reach the same result under either the least sophisticated consumer standard or the unsophisticated consumer standard.

In this case, the language of the collection letters at issue is undisputed, but the parties disagree whether the letters mislead or confuse the least sophisticated consumer.  There is a split of authority over who should make this determination—the judge or the jury.  For claims alleging violation of section 1692g, the majority of the courts that have considered this issue have determined that this is a question of law for the court to decide. *See*, *e.g.*, *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 n.2 (6th Cir. 2007); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000); *Terran v. Kaplan*, 109 F.3d 1428, 1432–33 (9th Cir. 1997); *Garcia–Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 817 (M.D.N.C. 2011); *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1065 (D. Minn. 2008); *In re Martinez*, 266

B.R. 523, 533 (Bankr. S.D. Fla. 2001). In addition, our Court has previously determined that the issue whether collection letters satisfy the requirements of section 1692g is a question of law that is appropriately resolved on summary judgment. *Rachoza v. Gallas & Schultz*, No. Civ. A. 97-2264-EEO, 1998 WL 171280, at *4 (D. Kan. Mar. 23, 1998) (citing *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). In contrast, the Seventh Circuit is the only court of appeals to hold that the question whether a debt collector violates section 1692g is an issue of fact for a jury to determine. *See Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

For claims arising under section 1692e, the Second, Fourth, and Ninth Circuits have determined that the question whether a communication is false and deceptive in violation of section 1692e is a question of law for the Court. *See Russell v. Absolute Collection Servs., Inc.*, __ F.3d __, 2014 WL 3973792, at *8 (4th Cir. Aug. 15, 2014) ("Although we have never directly addressed whether application of the objective least-sophisticated-consumer test is a question of law, we have assumed that to be the case."); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060–62 (9th Cir. 2011); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 36 (2d Cir. 1996). But the Fifth, Sixth, Seventh, and Eleventh Circuits have come to the opposite conclusion, finding that this determination is a question of fact for the jury. *See Gonzalez v. Kay*, 577 F.3d 600, 606–07 (5th Cir. 2009); *Kuehn v. Cadle Co., Inc.,* 335 Fed. App'x 827, 830 (11th Cir. 2009); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007). But, even the courts adopting this view have explained that not all cases require a jury trial if material facts are not disputed and the court is able to decide the case as a matter of law based on the language of the collection letter. *See Kuehn,* 335 Fed. App'x at 830 (whether a collection letter violates 15 U.S.C. § 1692e is not always a question for a jury; rather, "if there are two sets of reasonable

inferences that could be drawn from a dunning letter, and one set of inferences would result in a

violation of 15 U.S.C. § 1692e(10), while the other would not, it was appropriate for a jury to

decide which set of inferences to draw."); *see also Evory*, 505 F.3d at 776 (although the Seventh

Circuit treats claims under section 1692e as presenting questions of fact rather than of law, a

court may still decide the case on the pleadings if the plaintiff rests on the language of the

collection letter and has no other evidence to offer).

The Tenth Circuit has not addressed this issue for claims arising under either section

1692g or 1692e.  However, this Court's best judgment is that the Tenth Circuit would agree with

the majority view and hold that the Court should decide as a matter of law whether the language

in a collection letter is confusing to the least sophisticated consumer under section 1692g.  This

view is consistent with our Court's prior determination that the issue whether collection letters

satisfy the requirements of section 1692g under the least sophisticated consumer test is a

question of law that is appropriately resolved on summary judgment.  *See Rachoza*, 1998 WL

171280, at *4 (citing *Terran*, 109 F.3d at 1432).

The Court also predicts that the Tenth Circuit would apply a consistent approach to

claims arising under section 1692e and conclude that a court must determine whether a violation

has occurred as a matter of law.  This is consistent with the parties' position in this case.  Neither

party has made a jury demand, and both parties agree that there are no genuine issues of material

fact to resolve and the question whether the collection letters violate the FDCPA is an issue of

law for the Court's determination.[9]  And under the facts presented here, this result is also

---

[9]        Def.'s Memo. in Supp. of Mot. for Summ. J. against Pl. Ray (Doc. 13 at 2) ("Therefore, it is
simply a question of law as to whether this letter violates the FDCPA, which this Court can decide based
on this Motion for Summary Judgment" and "[t]here are no genuine disputes of fact regarding the claims
at issue."); Pl. Ray's Memo. In Supp. of Mot. for Summ. J. (Doc. 11 at 3) ("In this case, the alleged
violations are based on statute and all facts are contained in, and derived by the Defendant's collection

consistent with the Seventh Circuit's explanation in *Evory* and the Eleventh Circuit's holding in *Kuehn, i.e.*, that the question whether a collection letter violates section 1692e is not always a question for the jury if the Court can decide the case as a matter of law based on the undisputed language in the collection letter. *See Kuehn,* 335 Fed. App'x at 830; *see also Evory*, 505 F.3d at 776. Therefore, the Court finds that the issues presented in the parties' summary judgment motions are issues of law for the Court to decide and appropriate for resolution at this juncture.

### B.  Amount of the Debt

In this case, the parties dispute whether the collection letters sent by defendant to plaintiff Kalebaugh and plaintiff Ray comply with the requirements of the FDCPA by stating the "amount of the debt." 15 U.S.C. § 1692g(a)(l). The Tenth Circuit has not specified the precise information a debt collector must provide to satisfy the requirements of the FDCPA when stating the "amount of the debt." However, other courts of appeal have done so. The case cited most often for describing the requirements under 15 U.S.C. §1692g(a)(l) is *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000). In that case, the debt collector sent a letter to the debtor stating that the "unpaid principal balance" of the loan was $178,844.65, but that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement. The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures." *Id.* at 875. The Seventh Circuit concluded that the letter did not comply with the FDCPA because "[t]he unpaid principal debt is not the debt; it is only a part of the debt; the Act requires statement of the debt." *Id.* The court held that the debt collector instead must state the total

---

letter. The only issue is whether Plaintiff is entitled to judgment as a matter of law."); Pl. Kalebaugh's Memo. In Supp. of Mot. for Summ. J. (Doc. 16 at 3–4) (same).

amount due, including interest and other charges as well as the principal due, on the date the letter is sent. *Id.* The Seventh Circuit also included "safe harbor" language that a debt collector may use to comply with the FDCPA, as long as the debt collector provides accurate information and does not include other language that confuses the message. *Id.* at 876. The safe harbor language promulgated by the Seventh Circuit reads:

> As of the date of this letter, you owe $____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].

*Id.*

Defendant argues that the language in its collection letters is similar to the safe harbor language in *Miller*, and therefore it did not violate the FDCPA. Defendant further asserts that the defective language at issue in *Miller* is distinguishable because, in that case, the debt collector failed to provide the amount owed by the debtor but instead listed the "unpaid principal balance" and added that the amount did not include accrued but unpaid interest and other charges. Defendant asserts that its letters, in contrast, "clearly state[] the amount due" and "go[] on to let [plaintiffs] know that attorney's fees could be due, i.e. 'where applicable,' but the amount of any such fees is not yet known." Doc. 13 at 5; Doc. 18 at 5–6. But defendant's letters do not contain this additional explanation that defendant's summary judgment briefing provides. Rather, the letters simply state: "Balance: $[ ], attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court."

Defendant's argument is similar to one made by debt collectors in *Valdez v. Hunt and Henriques*, No. C 01–01712 SC, 2002 WL 433595 (N.D. Cal. Mar. 19, 2002). In that case, the caption of the debt collection letter stated the amount of the debt as: "ALLEGED DEBT:

13

$3056.08 plus interest." *Id.* at *1.  The debt collectors argued that "the words '$3056.08 plus interest,' truthfully communicate[ ] to [the debtor] that if he does not take steps to resolve the debt, then the amount of interest owing on the debt will continue to accrue." *Id.* at *2 (internal quotations omitted).  The court rejected the debt collectors' argument, finding that their "explanation strains credulity" because "[i]t is highly doubtful that the least sophisticated consumer would read 'ALLEGED DEBT: $3056.08 plus interest' as 'ALLEGED DEBT: $3056.08 as of today, plus any future interest which may accrue.'" *Id.*  The same is true here.  It is highly improbable that the least sophisticated consumer would read the words "Balance: $[ ], attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court" the same as "Balance: $[ ] as of today, plus attorney's fees that could be due, where applicable, but the amount of any such fees is not yet known."  Moreover, because the language is not clear, even a sophisticated consumer may not be able to glean from the letter the explanation provided by defendant.  *See id.* ("Even a sophisticated reader might be unlikely to divine such an interpretation of this phrase.")[10]

Defendant concedes that it could have placed the information about attorney's fees in the body of the letter, rather than listing it in the "balance," to let plaintiffs know that if the matter was not settled, then defendant would file a lawsuit on behalf of the creditor and would seek attorney's fees in such a lawsuit, thereby "warning [plaintiffs] of this very risk."  Doc. 9 at 9; Doc. 19 at 9.  Again, this more thorough explanation is not at all similar to the actual attorney's fees language contained in the letter and included as part of the "balance."  In addition, defendant concedes that it included the attorney's fees language as part of the "balance" although such fees

---

[10]     *Valdez* went on to find that the letter accurately stated the amount of the debt because, although the language in the caption describing the "ALLEGED DEBT" was confusing, the first line of the letter stated "unequivocally" the amount of the debt.  *Valdez*, 2002 WL 433595, at *3.  Unlike the letter in *Valdez*, the collection letters at issue here do not state the amount of the debt anywhere else in the body of the letter.

were only a future "risk" at that point in time and not part of the amount of the debt on the date

of the letter. *See Miller*, 214 F.3d at 875–76 (explaining that the statute required the debt

collector to state the total amount due "on the date the dunning letter was sent.").  Thus, the

Court holds that defendant's letters did not state accurately the amount of the debt on the dates

that defendant sent the letters.

Defendant relies on *Hutton v. Law Offices of Collins & LaMore*, 668 F. Supp. 2d 1251

(S.D. Cal. 2009), to argue that it stated accurately the amount of the debt.  In *Hutton*, the debt

collector sent a letter to the debtor stating "your outstanding balance due in the amount of

$22,519.17, which may not include accruing interest . . . ." *Id.* at 1253.  In concluding that the

letter sufficiently stated the amount of the debt as required by the FDCPA, the court explained

that "accruing interest" was "interest that a debtor may owe in the future if his or her debt is not

paid off in a timely manner." *Id.* at 1257.  The court described it as a "*potential* add-on to his or

her present debt that cannot be specified in a dunning letter and can only be referred to in a

hypothetical sense." *Id.*

In contrast, defendant here stated in its collection letters that plaintiffs owed a balance

that included a dollar amount and "attorney fees (where applicable), the exact amount to be

determined by agreement between you and us or by a court." Doc. 13-2, Doc. 18-2.  One could

read this language in at least two ways.  One could read the letter to state that plaintiffs owe

some amount of attorney's fees as of today, but the exact amount is unknown currently.  One

also could read the letter to say that plaintiffs may owe no attorney's fees if attorney's fees are

not "applicable" or if it is determined by "you and us or by a court" that plaintiffs do not owe any

attorney's fees.  Thus, from its own reading of the collection letters, the Court cannot discern the

amount of the debt owed by plaintiff Kalebaugh or plaintiff Ray on the dates defendant sent the

collection letters.  Defendant's letters are unlike the letters at issue in *Hutton* which included

"accruing interest" as a potential add-on.  Instead, defendant's letters include attorney's fees in

an uncertain and indefinite amount, which is contrary to the requirements of the FDCPA.

      The cases cited by plaintiffs are more analogous to the facts presented here.  While each

of these cases has slightly different facts from those in this case, these factual differences are not

so significant that they require a different result.  For example, in *Veach v. Sheeks*, the Seventh

Circuit held that a debt collector violated the FDCPA by sending a collection letter that stated

"Remaining principal balance $1,050.00; plus reasonable attorney fees as permitted by law, and

costs if allowed by the court."  316 F.3d 690, 692 (7th Cir. 2003).  The court explained that the

debtor "cannot be held liable for treble damages, court costs, or attorney's fees [which were

authorized by statute] *until* there has been a judgment by a court" and therefore, "they cannot be

part of the 'remaining principal balance' of a claimed debt."  *Id.* at 693.  The court further stated

that the purpose of the "amount of debt" provision in the FDCPA is "to inform the debtor (who,

remember, has a low level of sophistication) of what the *obligation* is, *not* what the final, worst-

case scenario *could* be."  *Id.*[11]

      Defendant tries to distinguish *Veach*, arguing that the collection letters there did not

demand damages that had not been awarded yet.  Rather, they note, the collection letters stated

---

[11]    The Court recognizes that the Seventh Circuit in *Veach* initially observed that the debt collector
"incorrectly stated the amount of the debt, but not because he specified indeterminate attorney's fees and
court courts.  Rather, by stating the amount of the debt as $1,050, [the debt collector] took it upon himself
to hold [the debtor] liable for legal penalties [in the form of treble damages] that had not yet been
awarded, penalties that for FDCPA purposes should have been separated out from the amount of the
debt."  *Veach*, 316 F.3d at 692.  But *Veach* went on to say that "the 'amount of the debt' provision is
designed to inform the debtor . . . what the *obligation* is, *not* what the final, worst-case scenario *could* be"
and therefore, the debt collector was prohibited from including "treble damages, costs, or attorney's fees"
as "part of the 'remaining principal balance' of a claimed debt" "*until* there has been a judgment by a
court."  *Id.* at 693 (emphasis added in underscored phrase).  Thus, this Court interprets *Veach* as holding
that a debt collector violates the FDCPA's amount of debt provision by including in the statement of the
amount of the debt attorney's fees that have not yet been awarded.

that attorney's fees "might" be added on, where applicable.  However, as explained above, the

language in defendant's collection letters is not as clear as its after-the-fact explanation.  Rather,

the letters included a demand for attorney's fees (where applicable) in the balance portion of the

letter without any further explanation that plaintiffs did not actually owe any attorney's fees at

that time.  Instead, the letters simply stated that the exact amount of attorney's fees would be

determined later.

Defendant also tries to distinguish plaintiffs' other cases cited to support plaintiffs'

argument that the collection letters here failed to state the amount of the debt.  But the Court

finds defendant's reasoning unpersuasive.  Rather, those cases involve similar factual situations,

and the Court finds them relevant to the issue presented here.  *See*, *e.g.*, *McDowall v. Leschack &*

*Grodensky, P.C.*, 279 F. Supp. 2d 197, 200 (S.D.N.Y. 2003) (where "[a]ttorney's fees were listed

as part of the 'balance due' portion of the statement . . . [and] there was an asterisk and a

corresponding explanation offered in the letter, this explanation did not clarify that plaintiff did

not owe any attorney's fees at that time.  Thus, at the very least, the letter was confusing to the

least sophisticated consumer, and violated the Act."); *Bernstein v. Howe*, No. IP 02-192-C-K/H,

2003 WL 1702254, at *4, 5 (S.D. Ind. Mar. 31, 2003) (collection letter stating that the amount

owed was "$4,401.28 plus interest and attorneys fees" violated the FDCPA because no

attorneys' fees (either contractual or statutory) were owed by the debtor at the time the letter was

sent; rather, there was only "the potential for an award of attorney's fees in the future, in the

event that the [debt collector] incurred attorney's fees as a result of pursuing legal proceedings

against [the debtor]."); *Wilkerson v. Bowman*, 200 F.R.D. 605, 608 (N.D. Ill. 2001) (collection

letter demanding, among other charges, "up to $350.00 attorney fees, exact amount to be

determined by agreement between you and us or by a court" did not state the amount of the debt

because it presented the debtor with "a list of potential but uncalculated additional charges" which may cause uncertainty to the debtor "whether she should dispute the debt or pay it."); *Bawa v. Bowman, Heintz, Boscia & Vician*, No. IP00-1319-C-M/S, 2001 WL 618966, at *4 (S.D. Ind. May 30, 2001) (collection letter stating the amount owed was "$11636.30, plus accrued interest and/or late charges, and attorney fees, exact amount to be determined by agreement between you and us or by a court" violated the FDCPA because it "failed to state the total amount due—including interest and other charges as well as principal—on the date the letter was sent."); *see also Weiss v. Zwicker & Assoc., P.C.*, 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009) (collection letter that stated "[y]our balance may include additional charges including delinquency charges, as applied at the direction of American Express, if said charges are permissible in accordance with the terms of your agreement" violated section 1692g(a)(1) because the letter could be reasonably interpreted in two ways and was likely to confuse even more sophisticated consumers).

In addition, this Court has located two cases from the Eastern District of Tennessee where the collection letters at issue contained language similar to that in the letters at issue here. *See Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 3834008 (E.D. Tenn. July 23, 2013); *see also Farmer v. Buffaloe & Assoc., PLC*, No. 3:12-CV-142, 2012 WL 6045976 (E.D. Tenn. Dec. 5, 2012). The collection letters in those cases contained identical language (except for the dollar amount of the debt) and stated:

Original Claim Amount: $3,464.32

Plus Attorney Fees and Contract Interest (IF APPLICABLE TO THE ACCOUNT)

YOU MUST CONTACT THIS OFFICE FOR A COMPLETE BALANCE PAY OFF.

*Lilly*, 2013 WL 3834008, at *6; *see also Farmer*, 2012 WL 6045976, at *6 (using identical language but listing the "Original Claim Amount" as $7,571.62).  In both cases, the Tennessee court denied the debt collector's motion to dismiss finding that plaintiff had stated a claim under the FDCPA for defendant's failure to disclose the amount of the debt because the letters "[did] not state the exact amount due, including any interest and other charges; rather, [they] state[d] that a certain amount plus attorney fees and interest, if applicable, will be due and that the debtor must contact the law firm to obtain the total payoff balance."  *Lilly*, 2013 WL 3834008, at *6; *see also Farmer*, 2012 WL 6045976, at *6.

Similarly, in this case, the letters do not state the exact amount due, but instead list a monetary amount owed and attorney's fees, which may or may not apply, and if they do apply, the exact amount of attorney's fees is unknown until determined by the debtor and defendant or by a court.  Therefore, the Court concludes that the collection letters do not state the amount of the debt as required by the FDCPA.  Consequently, defendant has violated 15 U.S.C. § 1692g(a)(1).

### C.  Character, Amount, or Legal Status of the Debt

Plaintiffs also argue that defendant's collection letters violated 15 U.S.C. § 1692e(2)(A) by falsely representing the "character, amount, or legal status of any debt."  Defendant counters that the collection letters stated the exact amount of the debt that was due on the dates of the letters, and therefore there was no false representation.  Defendant also asserts that its inclusion of potential exposure for attorney's fees was a true statement because Citibank could sue on this account and seek attorney's fees.  And, in fact, Citibank ultimately did just that—it sued both plaintiff Kalebaugh and plaintiff Ray to recover the amount of the debts and requested reasonable attorney's fees in both lawsuits.  Also, in plaintiff Ray's lawsuit, plaintiff Ray and

Citibank stipulated to judgment that included an amount for reasonable attorney's fees.  While all of this is true, it does not change the fact that the collection letters misrepresented the amount of the debt on the date that the letters were sent by including the language "attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court" in the balance line.

At least two courts have concluded that a debt collector misrepresents the amount of the debt in violation of section 1692e(2)(A) if it includes attorney's fees as part of the debt owed when no attorney's fees are actually owed by the debtor when the letter is sent.  *See Veach*, 316 F.3d at 693; *Bernstein*, 2003 WL 1702254, at *5.  Defendant tries to distinguish these cases, arguing that its letters only advised plaintiffs of the "potential" for attorney's fees.  This, defendant argues, contrasts with the debt collectors in *Veach* and *Bernstein* who demanded attorney's fees without any explanation that there was only a potential for attorney's fees.  But as explained above, the language of the collection letters at issue is not so clear.  While the letters state that the balance includes attorney's fees (where applicable), the letters never advise the recipients that the potential for damages will come into play only if the matter does not settle and defendant sues (on behalf of the creditor) and seeks attorney's fees in that lawsuit.  Thus, the Court concludes that defendant falsely represented the amount of the debt in violation of 15 U.S.C. § 1692e(2)(A).

### D.  Threatening to Take Action That Cannot Legally be Taken or That is Not Intended to be Taken[12]

Finally, plaintiffs argue that defendant violated 15 U.S.C. § 1692e(5) by "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."  Defendant responds that it did not violate this provision of the FDCPA because even though defendant had not yet incurred attorney's fees on the date of the letter, there was the potential for recovery of attorney's fees in the future.  That potential would arise if a lawsuit was initiated to recover the debt.  And, as defendant argues, that ultimately did occur here with defendant filing a lawsuit on behalf of Citibank against both plaintiff Kalebaugh and plaintiff Ray.

Plaintiffs' claim under section 1692e(5) "requires proof of a fact which amounts to a per se violation of § 1692e.  The sophistication, or lack thereof, of the consumer is irrelevant to whether [the debt collector] 'threat[ened] to take any action . . . that [was] not intended to be taken.'"  *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (quoting 15 U.S.C. § 1692e(5)).  Although defendant misstated the amount of the debt in the collection letters, defendant did not threaten any action that it legally could not take or that it did not intend to take.  In fact, defendant took the threatened action by filing suit against plaintiff Kalebaugh and plaintiff Ray seeking recovery of the amount of the debt as well as attorney's fees.  *See Bieber v. Associated Collection Servs., Inc.*, 631 F. Supp. 1410, 1416 (D. Kan. 1986) (finding § 1692e(5) not violated where the threatened action of filing a lawsuit was taken by defendant's client, the creditor); *see also Little v. Portfolio Recovery Assoc., LLC*, 548 Fed. App'x 514, 516 (10th Cir. 2013) (dismissing plaintiff's claim under § 1692e(5) where she did not allege "any facts

---

[12]    Defendant argues that plaintiff Ray did not address the 15 U.S.C. § 1692e(5) claim in her response to defendant's summary judgment motion, and therefore she has waived the claim.  While plaintiff Ray did not substantively respond to defendant's arguments in her response, she continued to accuse defendant of violating section 1692e(5).  *See* Doc. 14 at 9, 14.  The Court declines to find that plaintiff Ray has waived this claim.

supporting an inference that [the debt collector's] threats to litigate were legally proscribed or not made in good faith.")  Thus, the Court concludes defendant did not violate 15 U.S.C. § 1692e(5).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Jessie L. Ray's Motion for Summary Judgment (Doc. 10) is granted in favor of plaintiff Ray on her claims under 15 U.S.C. § 1692g(a)(1) and 15 U.S.C. § 1692e(2)(A) and denied on her claim under 15 U.S.C. § 1692e(5).

**IT IS FURTHER ORDERED THAT** defendant's Motion for Summary Judgment against plaintiff Jessie L. Ray (Doc. 12) is granted in defendant's favor and against plaintiff Ray on her claim under 15 U.S.C. § 1692e(5) and denied on plaintiff Ray's claims under 15 U.S.C. § 1692g(a)(1) and 15 U.S.C. § 1692e(2)(A).

**IT IS FURTHER ORDERED THAT** plaintiff Matthew Kalebaugh's Motion for Summary Judgment (Doc. 15) is granted in favor of plaintiff Kalebaugh on his claims under 15 U.S.C. § 1692g(a)(1) and 15 U.S.C. § 1692e(2)(A) and denied on his claim under 15 U.S.C. § 1692e(5).

**IT IS FURTHER ORDERED THAT** defendant's Motion for Summary Judgment against plaintiff Matthew Kalebaugh (Doc. 17) is granted in defendant's favor and against plaintiff Kalebaugh on his claim under 15 U.S.C. § 1692e(5) and denied on plaintiff Kalebaugh's claims under 15 U.S.C. § 1692g(a)(1) and 15 U.S.C. § 1692e(2)(A).

**IT IS FURTHER ORDERED THAT** the Court refers this case to the Magistrate Judge for further scheduling.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2014, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge